Arthur L. Smith  
vs. } Divorce No. 27039.  
Alice T. Smith

October 11, 1933.

CAPOTOSTO, J. Heard on husband's petition and wife's motion in the nature of a cross-petition setting forth various grounds for divorce.

The Smiths were married June 11, 1903. They have three children; two are married while the youngest, now nineteen years old, is a student at college. The ·litigation between these parties began on August 7, 1920. Since that day it has continued with increasing acrimony. Charges and counter charges have been preferred and indiscreetly published. A final decree for divorce from bed and board was entered in favor of the wife on June 19, 1922. The next ten years saw a contest for personal advantage but not one single move on the part of either toward reconciliation.

Under date of July 30, 1932, the husband asked for a divorce on the ground of living separate and apart for ten years. On September 15, 1932, the wife filed a motion in the nature of a cross-petition seeking a divorce on the ground of adultery. By stipulation between the parties dated September 25, 1933, the very day that the present hearing began, the husband added the grounds of extreme cruelty and gross misbehavior to his petition. This state of the record opened the door for all kinds of accusations, denials, recriminations and inferences, which, we regret to say, the parties took full advantage of in the presence of their married son and daughter. We trust that this lack of reserve' will exert no untoward influence upon the two innocent victims of such parental indiscretion.

Misunderstandings began in the Smith home when the three children most needed the protection of their parents. As time rolled on, the parties gradually lost every sense of restraint in their reciprocal bitterness. They ultimately disregarded their obligation, be it legal or moral, to society in general and to their own children in particular. The first demands a reasonable compliance with its code of ethics; the second expect that natural affection at least will deter prudent parents, especially if cultured and in the public eye, from recklessly broadcasting their infirmities for mere personal satisfaction. It is our opinion that both society and the Smith children are as much interested in the present proceedings as the envenomed litigants. They are free to think what they will of each other if they no longer transcend the bounds of ordinary decency. If the principals in this case would only recall the opening line of Cicero's oration against Cataline perhaps their sense of propriety might be awakened from its morbid lethargy.

With this in mind, any reference to the testimony before us, even in a most summary manner, will serve no useful purpose. It would only bring comfort or annoyance to those who may have drawn different inferences from a fragmentary or biased consideration of the circumstances which destroyed what might have been a happy home. The record, when interpreted in the light of experience, speaks for itself. We deem it sufficient to say that, excluding the ground of living separate and apart for ten years which will be separately considered, both parties have failed to prove all other grounds relied upon by the degree of proof that is essential to prevail. The mantle of generality is intentionally cast over the facts in evidence for the good of all concerned. The petitions of both parties setting forth any grounds for divorce other than the one hereinbefore specifically excepted are hereby denied and dismissed.

It is beyond question that the parties in this case have lived separate and apart for over ten years. Love left long ago, and respect for each other has gradually and now completely disappeared. The possibility of reconciliation has been a myth for some years. Under these circumstances, society is entitled to relief from the further mockery of a sacred institution. Irrespective of the able and impassioned argument of counsel for the wife, it is not for this Court to pass upon the propriety or impropriety of the statute in question. That is a legislative and not a legal question. So long as the statute remains in force it fixes public policy and is not open to repeal by judicial interference. Moreover, it has been repeatedly interpreted by our own Supreme Court. Omitting specific reference to the various opinions and rescripts in reference thereto, we prefer to cite and follow the terse, clear and positive statement of Mr. Chief Justice Stearns in the recent case of *McKenna* vs. *McKenna*, advance sheets of volume 53 at page 375: "The basis for a divorce on the ground of living separate and apart for ten years is not the wrongdoing of one of the parties. It is the policy of the State—where the husband and wife have, for so long a time, failed to become reconciled—not to compel them to continue in a marital status which is ostensible rather than real." In the case before us the marriage certificate is about the only remaining trace of such an important status. For their own and the common good the facts demand that the Smiths definitely sever all ties as soon and as completely as possible. Therefore, the petition of the husband on the ground of living separate and apart for ten years is granted.

The interest of the wife in any real estate should be determined and paid through a sale of the property at the earliest opportunity. The "Birches," which formerly was the family home in Barrington, is now a liability rather than an asset. It is an old fashioned big house, unoccupied at the present time and in need of some repair. In view of the present day tendency towards small homes, it is probably difficult to rent except for very limited purposes. The real value of this piece of property is to be found in the land rather than in the buildings. For the purpose of the record, which the Court sought to make as complete as possible in the hope of avoiding future friction, each counsel had an expert appraise the property. Both valued it at $18,000. With this amount and the age of the parties as a basis, the wife's dower is now worth $1,212.84. Even if the property did not bring as much as the appraised value in the open market, we believe that it should be sold and the equities of the parties settled. As the Court seriously questions its authority to order a sale, it makes no order with reference thereto. However, it advises those in interest to exercise a little common sense for their own financial and personal benefit. The same may be said about the furniture, an inventory of which was made in 1928 and filed with the papers in a prior proceeding. If reason prevails, there should be little difficulty to divide this equitably between the parties.

It is advisable to separately fix the amount that is to be paid to the wife for alimony and the sum that should be paid by the father for the support of the boy who is in college. Neither the petition of the father nor the motion in the nature of a cross-petition by the mother prays for the custody of the minor. When in Providence the young man lives with his mother. After a careful consideration of the evidence, we are of the opinion that under present conditions and until further order of the Court the sum of twenty-five (25) dollars a week is a fair al-

lowance as alimony to the wife. The boy should be disturbed as little as possible. In view of the fact that no tuition fee is required in the institution which he attends, fifteen (15) dollars a week is a reasonable sum to be paid by the father to the mother for his support, whether at college or in Providence, such sum to be so paid as long as the young man lives with the mother and until further order of the Court.

For petitioner: Tillinghast, Morrissey & Flynn.

For respondent: Cooney & Cooney.